320-0127 to people in the state of Illinois acted by Corrine Navarro v. D. A. L. Kendrick Jr. Ailed by Demetrius Gullfuss. Thank you. Mr. Gullfuss, good afternoon. Good afternoon, Justice, Justice McDade, Your Honors. I'm Demetrius Gullfuss. I'm from the Office of the State Appellate Defender, and I represent Daniel Kendrick. Your Honors, in recent years, emerging adults have been challenging the constitutionality of their sentences under the principles of Milner v. Alabama. The Illinois courts now recognize that emerging adults under the age of 21 are different than adults, and that Milner claims are not foreclosed to them. Nevertheless, we've seen that Illinois courts have been reluctant to grant emerging adults full Milner relief, primarily because these emerging adults haven't presented scientific evidence or expert testimony in the trial court and in jury hearings to support their claims. We've seen this, for example, in People v. House. This case is an exception. At sentencing, Danny Kendrick had an expert in developmental psychology testify on his behalf. This expert gave evidence not only about emerging adults and their brain development specifically, but also about Danny Kendrick as an individual. This evidence was not rebutted. The state did not have its own expert at sentencing and did not present its own scientific evidence. So in light of this, Danny Kendrick is asking that this court vacate this mandatory de facto life sentence and to remand for resentencing. He's made three separate arguments to obtain this relief, and my plan today, if time permitting, is to address all three of them. First, he argues that his sentence violates Illinois' proportionate penalties clause on its face. And to be clear, we are asking that this court hold that it is unconstitutional for a court to impose a mandatory de facto life sentence on an emerging adult under the age of 21, such that the court does not consider that person's youth and its attendant characteristics. Mr. Kendrick's second argument is that his sentence is unconstitutional as applied. And third is that this Court should conclude at the very least that the trial court's finding that he did not have rehabilitative potential was against the mathis weight of the evidence. I would note that we've also raised an issue with regard to other acts of evidence. Although that issue is important, I'll be submitting it to the Court on the briefs alone. But if the Court has any questions about it, I'd be happy to answer them. With respect to the facial challenge, Dr. Garbarino gave excessive evidence about the psychological development of emerging adults. He explained that a person's brain isn't fully developed until mid-20s, approximately the age of 25, and that this is the official position of the American Psychological Association. So we know that adolescence does not end at age 18, and adulthood does not begin at age 18. Adolescence continues into a person's early 20s. The doctor, in his expert opinion, explained that during this period of emerging adulthood, emerging adult's behavior and consciousness is in flux and susceptible to change. And therefore, emerging adults are presumed to have rehabilitative potential. And during the period of emerging adulthood, the same issues of immaturity of thought and behavior and emotional regulation and failure to consider consequences and risks of one's actions, those same issues that plague juveniles that the Supreme Court talked about in Miller also plague emerging adults until their brain is fully developed. One other important point that Dr. Garbarino made at sentencing was that when children experience traumatic events throughout childhood, that has a negative impact on their psychological development. The higher levels of adversity an emerging adult experiences as a child, that slows down their brain development and it damages their development, and that leads to increased levels of immaturity, on top of the immaturity that an emerging adult already has by virtue of being a late adolescent. Now, in light of all of these things that Dr. Garbarino said, his opinion was that current developmental science strongly supports extending the principles of Miller to emerging adults ages 18 and over. He said that current science does not support drawing the line at age 18. He even explained that the American Psychological Association knew all of this when it participated in the litigation of Miller v. Alabama in the Supreme Court of the United States. Your Honors, the scientific principles that Dr. Garbarino explained at sentencing are widely accepted. We've seen this in the decisions of the appellate court, and we've seen this in our legislature's policy. The appellate court recognizes that brain development does not end until the mid-20s, that Illinois as a society recognizes the age of 21 to be the beginning of adulthood, and that Illinois law treats emerging adults under the age of 21 differently than it does full-grown adults. Our legislature has drawn the line at age 21 to mark the beginning of adulthood and all the rights that accompany adulthood. For example, the Juvenile Court Act defines an adult to be someone who's age 21 and over. Our legislature prohibits the sale of alcohol, tobacco products, cannabis, and wagering tickets to people under the age of 21. In Illinois, the person has to be over 21 to obtain a FOIA card unless they have parental consent. Under the Unified Code of Corrections, class-X sentencing for recidivists only applies to people 21 and older. Recently... I have a question on the patient argument. What's the authority that we have as the appellate court now to say that it's basically unconstitutional to sentence this young man who was over the age of 18 at the time of the offense in the way that he was sentenced here? There is not a case in Illinois that holds that. However, the Illinois Constitution, in particular, the Proportionate Penalties Clause, reflects... Isn't that an as-applied challenge in an occupation? No. No. No. The Constitution reflects evolving standards of decency. And while I am also arguing an as-applied challenge, I'm arguing for this Court to draw a bright line at age 21, essentially extending the rebellion principles to the age of 21, so that rule applies not only to Danny Kendrick but to everyone similarly situated. So what I'm asking for is widespread relief, not just to look at Danny Kendrick's circumstances. Thank you. Our legislature also has recently allowed emerging adults under the age of 21 to be eligible for parole review subject to a variety of exceptions. In light of Dr. Garbarino's evidence, the decisions of the Appellate Court, and also legislative policy, it's clear that Illinois society now regards emerging adults who are under the age of 21 to be different from adults and that they should be treated differently. Like juveniles, emerging adults have less vulnerability than adults, and they have greater rehabilitative potential. It is cruel and it should shock the moral sense of the community to impose a mandatory de facto life sentence on an emerging adult without first considering that emerging adult's youth and its attendant characteristics. Doing so decreases the motivation for an incarcerated emerging adult to want to rehabilitate because he or she will know that they're never going to get out of prison. And it also wastes rehabilitative potential because even if they do rehabilitate, they're never going to be able to see outside of prison and reenter society as a rehabilitated adult, despite the fact that they have rehabilitative potential. So for all these reasons, Danny Kendrick asks that this court vacate his sentence as being facially unconstitutional. We have a question, Mr. Goff. Are you asking for a bright line 21, or are you asking us to leave it open-ended? I'm asking for the line to be drawn at 21 so that under the proportionate felonies clause, the Miller Principles apply to 18, 19, and 20-year-olds. Okay, and what's the value of having a flat cutoff like that? The value is that you have emerging adults in that age range who are less culpable than adults, and they are presumed to be capable of rehabilitating. And if you don't consider their youth and their dependent characteristics and their capacity to rehabilitate at sentencing, and you disoppose a mandatory de facto life sentence, you're ignoring that and you're wasting the rehabilitative potential, and you're sending someone to prison for the rest of their life, despite the fact that they're less culpable than adults, and they're more akin to a juvenile. Okay. Under the principles of Miller, it would seem that there should be an individual analysis. I mean, what's to say that a person who's 23, for example, should not have the same benefit as the person that you're arguing the cutoff should be 21 for? That's entirely possible. Someone who is 23 could, due to, for example, adverse childhood experiences, be developmentally delayed such that developmentally, at the time of their offense, they're akin to being a juvenile. That would be, because I'm asking for the court to draw a line at 21, that type of argument could be made as an as-applied challenge. It doesn't foreclose that. But one of the things that Dr. Garbarino did say is that during that period of emerging adulthood, the person's development is in flux, and they become more mature as they get older. So their immaturity decreases from, you can start at whenever, but as they get closer to their mid-20s, they become more mature. So we think, in light of where the legislature has gone and what society recognizes as reflected in court decisions, that drawing the line at 21 is a sensible thing to do, and it's perfectly in line and justified by science. With respect to the as-applied challenge, Danny Kendrick was 19 years old at the time of his offense. He did not have a prior adjudication or conviction for a violent crime. The evidence in this case was not that Mr. Kendrick went out looking to kill someone. His offense was a robbery got wrong. The victim, Mr. Buckner, was shot when he resisted, and he grabbed Mr. Kendrick's gun. Now, Dr. Garbarino, in his expert opinion, stated that Danny Kendrick's conduct in this case reflected the hallmark characteristics of youth, which is immaturity, impulsiveness, and a failure to appreciate the risks and consequences of his action, and that all of that was due to his adolescence and significant adverse childhood experiences that caused damage to his development. The doctor highlighted the fact that Danny Kendrick was physically and mentally abused, not only by his parents, but also by other family members. There was testimony at sentencing that he was whipped by his parents and that his family treated him as a slave. The evidence that Dr. Garbarino also emphasized was that neither of Danny Kendrick's parents wanted to be his parent. They essentially abandoned him. DCFS was involved at the age of three. Both of his parents were frequently in and out of prison. His mother had untreated schizophrenia while at home, and she had substance abuse problems. On top of that, Danny Kendrick lived in 16 different homes before the age of 18. So in addition to essentially not having parents who wanted to care for him, he didn't have a stable home. His adverse childhood experience score was worse than 90% of Americans, and he grew up in an area that was equipped with a lot of violence and he developed a warzone-like mentality. And despite all of that, it was Dr. Garbarino's expert opinion that Danny Kendrick was still capable of rehabilitation. And he said that, and this is very significant, that Danny Kendrick's condos at the age of 19 could not and did not accurately reflect his ability to rehabilitate and what he could become as an adult. It actually masked all that. Mr. Garbus, where in the record does it indicate that the trial judge didn't consider everything that you said? His childhood, his broken homes, the whole thing. And what he did in prison while he was incarcerated. I will tell you this. The record, given Dr. Garbarino's unrebutted testimony, which can only be rebutted by testimony from another expert, clearly established that he had rehabilitated potential. Is there an authority that says that the trial judge must accept the expert testimony? Yes, there is. I don't have the case offhand. The court doesn't have the discretion after listening to the testimony to reject it? Not unless there is testimony from another expert that contradicts it or if somehow that expert was impeached, which was not the case here. You can't simply reject the testimony of an expert without expert testimony that reflects or contradicts it. But getting back to your first question, the evidence is very clear that Daniel Kendrick had rehabilitated potential and that he was actually in the process of rehabilitating. We have an eight-year period between the offense and sentencing where the expert looked at everything he had done and said this person is actually rehabilitating. He is changing his life. And it's not a reasonable conclusion when you listen to the evidence at sentencing and you read his report to conclude that Daniel Kendrick did not have rehabilitated potential. So what I believe happened here when you look at the judge's ruling at sentencing and the sentencing determination was that the judge said, okay, Miller doesn't apply because he's 19. Therefore, I don't really need to listen to this expert and what this expert has to say. But under the Constitution in Illinois, rehabilitation is an objective at sentencing. And the judge must consider evidence of rehabilitation. And when that judge did not consider what the expert said under the evidence that Daniel Kendrick has rehabilitated potential and is actually rehabilitating, that's an error. And it's reflected in the court's finding that Daniel Kendrick was not capable of rehabilitation. I see that my time is up. If there's any further questions. Thank you. Thank you. Ms. Navarro. Good afternoon. Good afternoon. Good afternoon. May it please the Court. My name is Karen Navarro, and I represent the state. A defendant was convicted of first-degree murder and was then sentenced to 60 years' imprisonment following a jury trial. On appeal, defendant raised two issues. The first would be that the trial court erred in admitting other crimes evidence, which was a video interview of defendant where defendant mentioned previous robberies into trial. And then the second issue was that defendant's life sentence, de facto life sentence of 60 years, violated the Article I, Section 11 of the Illinois Constitution. Defendant argued both that it violated as applied to defendant and on its face. For today's argument, I would like to focus on the second issue. But if there are any questions as to the first, I would be happy to answer those as well. As to the second issue, defendant first argued that the de facto life sentence was unconstitutional on its face. However, the state submits that in order to challenge a statute on its face, there would need to be a showing that the statute is unconstitutional under any possible set of facts. Here, defendant is merely focusing on a specific age group. So that would have it be considered not a facial challenge, but rather as an as-applied-to-defendant challenge, which is why I would like to focus on that today. So defendant argues that as applied to defendant, the de facto life sentence was unconstitutional. And cites to the appellate court's decision in People v. House, where the court had vacated a 19-year-old defendant's life sentence and remanded it for evidentiary hearing. The Supreme Court then went ahead and reversed the appellate court's blanket vacate of the sentence and noted that in order for it to be applied, it needed to be taken into an evidentiary hearing. As such, it rejected a blanket standard that just because a defendant is 19 years old, a life sentence cannot be issued. It essentially stated that it needed to go to an evidentiary hearing where the facts needed to be applied specifically to defendant's circumstances. Here that did happen in the trial court. Trial court held a hearing where defendant testified. The trial court considered all of the facts of the case, and defendant presented a lengthy testimony from an expert that discussed defendant's views, rehabilitative potential, the effects of Miller on not just defendant, but other defendants in that age group. After hearing everything, the trial court still held that the 60-year life sentence was appropriate. Now, while defendant argues that because the court noted that Miller didn't apply to defendant, that it just dismissed anything else that occurred in that hearing, and that's just simply not the case. The court was just pointing out, as in-house, that there is no blanket restriction on a defendant to get a life sentence just because they're 19. That's what essentially a house held, and that's what the trial court, again, was noting. But in its decision, the trial court noted that it considered everything it heard, defendant's testimony. It listened to the testimony by the expert. It considered the severity of the crime. And it also considered the fact that defendant had been given opportunities in the past to rehabilitate himself and had simply walked away from them. The court also considered the conduct that defendant exhibited while in prison, while in the courtroom, and any time that the trial court was able to view and interact with defendant. In addition, the trial court also noted that it took into account that defendant, even at the sentencing hearing, still maintained his innocence of the murder. Now, these are all things that the trial court is allowed to consider in establishing their sentence, as they have a great discretion to weigh everything that's submitted to them in order to make their determination. Here, the expert did testify that defendant was 19 years old at the time, as to his home condition, his growing up conditions, the struggles that he had with his family and being in DCFS. But this was all considered by the trial court. The trial court did not simply ignore it and make a ruling. However, the trial court placed more weight on the defendant's demeanor in court. It noticed that defendant was still maintaining his innocence and that he had been given rehabilitative potential in the past. Now, defendant says that we should just ignore the fact because this happened in the past. But this is all still things that the trial court is allowed to take into consideration in making its ruling. So here, really, defendant is asking us to re-weigh everything that was submitted to the trial court during sentencing and weigh it in favor of defendant while ignoring the trial court's own evaluation of everything that was submitted to them. Ms. Navarro, what's your position? Do you believe that the trial court must accept the unrebutted expert testimony? No, my position would be that that's not correct because the trial court has the discretion to weigh anything that's submitted, which is included in expert testimony. It's just as defendant testified in the sentencing hearing. That's something that the trial court can weigh in its determination because it comes down to not just rehabilitative potential that is considered when making a sentence, but also the severity of the crimes and additional factors that the court can consider and must consider. The trial court, it's only required that they consider all of these factors, but they don't necessarily need to place more weight on the testimony that the expert gave, which even when you look at the testimony given by the expert, there was still some, even within their own community, whether an adult starts, becomes an adult at 21, 24, 25. Many of the sources that even defendant in the brief noted, there's a disconnect between whether somebody stops growing at the age of 19, whether they stop growing at 21, whether they stop growing at 24, the way that somebody's mind develops. And I think that's something that the trial court is allowed to take into consideration, as well as everything else that's being presented. So here, because the state holds that the trial court did consider everything that was presented, there was a very thorough record as to the testimony that the expert gave. It cannot be said that the trial court just dismissed it by stating that Miller doesn't apply. The trial court, when it gave its determination, listed out every single thing that it went through. It stated all testimony heard, the pre-sentence investigation. So it did consider everything in giving its sentence. And that's why we ask that the court deny defendants' arguments. If there's any other questions. Mr. Crowe, I think you had a motion to strike defendant's authority also. Did you want to say anything as it relates to that? I would just like to stand on the motion that I submitted and just know that there was authority in the original brief that was cited, that were some blogs or journals from scientific community. And I would just note that on an appeal, we rely on the records, such as the testimony that was presented during trial during sentencing hearing, not outside sources. Now, while the appellate court and the Supreme Court have all cited two sources like that in the past, we don't believe that that is an invitation for counsel to go ahead and also do that. Thank you. Any other questions? Okay. Thank you. Thank you, Mr. Crowe. Mr. Gold, do you have something you'd like to add? I'll start with the fact that defendants in sentencing are entitled to maintain their innocence. I would note that during the statement of allocution, Mr. Kendrick did express empathy for the victim's family. And that's important, according to the unrebutted expert testimony in this case, because the doctor said that all emerging adults are presumed to be capable of rehabilitation, except for very rare circumstances. And those are circumstances where the emerging adult is a psychopath or they have been so profoundly damaged as a child that there's nothing to build upon to rehabilitate. The doctor said Danny Kendrick is not a psychopath. He's capable of rehabilitation. He shows empathy. He cares about the people he cares about. Did he acknowledge his guilt in the statement of allocution or just express empathy? He maintained his innocence, which he's entitled to do. You're talking about the trial. I'm talking about the statement of allocution, you're saying. Correct. Correct. And he expressed empathy for the victim's family, saying, I don't intend to hurt them by maintaining my innocence. With respect to counsel's argument that Danny Kendrick was given opportunities in the past to rehabilitate, what the court at sentencing was referring to and what the state refers to now in appeal was the fact that Danny Kendrick walked out of drug treatment at age 17 when he was a juvenile for a marijuana addiction, a drug that's now legal. I think it's more important and much more probative to look at what Danny Kendrick did in the eight years after the offense until the time he was sentenced than to look at what he did as a juvenile and at age 19. We have the expert highlighting the fact that Danny Kendrick, after the offense, is reflecting on his life. He has a much more mature perspective. He has an appreciation for the fact that his family life and his childhood was dysfunctional and that his conduct at the age of 19 as an adolescent was due to the fact that he was immature and couldn't control his emotions. The expert is highlighting the fact that Danny Kendrick now meditates to deal with issues of anger and depression, that he seeks spiritual development, and that he's read over 2,000 books while in jail, which demonstrates intellectual curiosity. The expert said, I am confident he will continue to rehabilitate in the future. We have expert testimony saying he is currently rehabilitating. So it's inexplicable how the trial judge concluded that Danny Kendrick doesn't have rehabilitated potential. You have an expert saying he does and that he actively is and a record showing that he is. Counsel argued that there's evidence in the record that says that the brain stops developing at various ages, could be 19, could be 20, could be 21, could be 25. I don't think that's accurate. The evidence was that people have different maturity levels at different ages. Someone at 21 could be more mature than someone at 23 or more mature at 18 than 23. But that doesn't mean their brain is fully developed when they're at that high maturity level because someone could be immature because of, like the doctor explained, adverse childhood experiences. That damages development. And the last thing I'll say, and this is getting back to the point, the question that Your Honor has been asking both opposing counsel and I, is can a judge reject unrebutted expert testimony? I read the cases today that say that. I can't remember, aside from an unpublished decision, which cases those are versus civil cases. I know in an unpublished decision, criminal that another attorney in my office dealt with, that was relied upon. I would be more than happy to submit supplemental authority if the court would like. Aside from that, if there's no further questions, we respectfully request that the court vacate Danny Kendrick's sentence and remand for re-sentencing. I would appreciate it if you would provide us with the cases that you're talking about. Also, that was my comment. I wanted to see those cases. As I sit here right now, I would disagree. But if you say that you have them, I'd like to see them. Will the court be issuing a written order, or would you just like to tell me a date that you want it done? Um, I think let's just set the date. We can do that. Absolutely. To respond. Absolutely. Okay. Are there any other questions? No. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and issue a written decision as quickly as possible.